THE HONORABLE JAMES L. ROBART

FILED _____ ENTERED
LODGED _____ RECEIVED

SG   AUG 3 1 2015

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                   DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>              Plaintiff,<br><br>   v.<br><br>INTERNET ORDER LLC also doing business as STROLL and PIMSLEURAPPROACH.COM, a Maryland Limited Liability Company; and DANIEL ROITMAN, individually and on behalf of his marital community, as Chief Executive Officer of INTERNET ORDER LLC,<br><br>              Defendants. | NO.  2:14-cv-01451-JLR<br><br>CONSENT DECREE |

Plaintiff, State of Washington, acting by Attorney General Robert W. Ferguson, (herein referred to as "Plaintiff), filed a Complaint in the above-captioned action (herein referred to as the "Complaint") pursuant to the Restore Online Shoppers' Confidence Act, 15 U.S.C. § 8403 (1)-(3) ("ROSCA"), RCW 19.86, the Consumer Protection Act, and RCW 19.56.020, the Unsolicited Goods Act, against Defendants, Internet Order LLC, d/b/a Stroll, and d/b/a Pimsleurapproach.com (herein referred to as "IO"); and Daniel Roitman, individually, and as

1

1  Chief Executive Officer of Internet Order LLC (herein referred to as "Roitman").  IO and

2  Roitman are collectively referred to as "Defendants."

3  Plaintiff and Defendants do hereby consent to the entry of this Consent Decree and its

4  provisions (herein referred to as the "Consent Decree" and/or "Judgment").[1]

5  This Consent Decree is entered into by Defendants freely and voluntarily and with full

6  knowledge and understanding of the nature of the proceedings and the obligations and duties

7  imposed upon it by this Consent Petition.  Defendants consent to the entry of this Consent

8  Petition without further notice unless Defendants and/or their counsel are required to make an

9  appearance before the Court in connection with its entry.  No offer, agreements or inducements

10  of any nature whatsoever have been made to Defendants by Plaintiff or its attorneys or any

11  employee of the Washington Office of Attorney General to procure this Consent Decree other

12  than those set forth herein.

13  In the event the Court shall not approve this Consent Decree, this Consent Decree shall

14  be of no force and effect.

15  Plaintiff and Defendants hereby stipulate that this Consent Decree shall act as a

16  permanent injunction issued under 15 U.S.C. § 8405(a) of ROSCA, and RCW 19.86.080 of the

17  Washington Consumer Protection Act.

18  ## I.   GENERAL

19  1.1   Jurisdiction.  This Court has jurisdiction over the subject matter of this action

20  and the parties.  This Court has jurisdiction over Defendants for the purpose of entering into

21  and enforcing this Consent Decree.  Jurisdiction is retained by this Court for the purpose of

22  enabling the parties to this Consent Decree to apply to this Court for such further orders and

23  directions as may be necessary or appropriate for the construction, modification or execution of

24  [1] At or about the same time that this Consent Decree is being filed with the United States District Court,

25  Western District of Washington, the Commonwealth of Pennsylvania will be filing a Consent Petition with
Defendants to settle the pending lawsuit captioned *Commonwealth of Pennsylvania v. Internet Order LLC d/b/a
Stroll et al. and Daniel Roitman, No. 02866,* in the Court of Common Pleas of Philadelphia County, with similar

26  terms.  Additionally, the State of New York will be entering into an Assurance of Discontinuance with
Defendants, also with similar terms.

CONSENT DECREE
CASE NO.  2:14-cv-01451-JLR                    2                    ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1    this Consent Decree, including the enforcement of compliance and penalties for violation.

2    Plaintiff's Complaint in this matter asserts claims under the provisions of ROSCA , RCW

3    19.86, the Consumer Protection Act, and RCW 19.56.020, the Unsolicited Goods Act.

4       1.2    <u>Defendants</u>. For purposes of this Consent Decree the term "Defendants", where

5    not otherwise specified, shall mean Internet Order LLC, d/b/a Stroll, and d/b/a

6    Pimsleurapproach.com; and Daniel Roitman, individually, and as Chief Executive Officer of

7    Internet Order LLC.

8       1.3    <u>Definitions</u>. For the purposes of this Consent Decree, the following definitions

9    apply:

10       (a)    "Account Information" means any information that would enable

11    Defendants to cause a charge to be placed on or against a customer's account, whether credit,

12    debit, or any other kind of account or method of billing.

13       (b)    "Advanced-Level Course(s)" means any Language Learning Method

14    good or service, including but not limited to a Pimsleur Gold Level course, that is sold through a

15    Negative Option Offer or Negative Option Plan, and that is offered in conjunction with or in

16    addition to a primary good or service, including, but not limited to the Quick and Simple CD set.

17       (c)    "Automatic Renewal Plan(s)" means an offer or plan in which the

18    Defendants automatically renew a contract at the end of a fixed period unless the consumer

19    cancels or instructs that the offer or plan should not be renewed. For purposes of this Consent

20    Decree, an Automatic Renewal Plan shall be considered a Negative Option Offer or a Negative

21    Option Plan.

22       (d)    "Clear and Conspicuous" or "Clearly and Conspicuously":

23       (i)    when referring to a written statement, disclosure, or any other

24    information, means that such statement, disclosure, or other information, by whatever medium

25    communicated, (a) is readily noticeable and readable (b) is in readily understandable language

26    and syntax (c) is in a type size, font, appearance and location sufficiently noticeable for a

1    consumer to read and comprehend it, in a print that contrasts with the background against
2    which it appears, (d) is in contrasting type, font or color to the surrounding text of the same
3    size, and (e) is visually distinguished from the surrounding text of the same size by a border,
4    symbols or other marks.  If such statement, disclosure, or other information is necessary as a
5    modification, explanation or clarification to other information with which it is presented, it
6    must be presented in Direct Proximity to the information it modifies in a manner that is readily
7    noticeable and understandable.

8                    (ii)     As to statements, disclosures, or any other information made or
9    presented orally, "Clear and Conspicuous" or "Clearly and Conspicuously" shall mean that
10   such statements, disclosures, or other information shall be delivered (a) in readily
11   understandable language and syntax and (b) in a volume, audibility, and cadence sufficient for
12   the consumer to hear, comprehend, and understand the entire statement, disclosure or such
13   other information.

14                   (iii)    As to statements, disclosures, or any other information made or
15   presented on the Internet or other web-based applications or services, in addition to the other
16   requirements stated herein, "Clear and Conspicuous" or "Clearly and Conspicuously" shall
17   mean that such statements, disclosures, or any other information shall be placed in locations on
18   the same webpage if doing so allows for the statement, disclosure, or other information to be
19   readily noticeable and understandable.  Such statement, disclosure, or other information shall
20   be (a) sufficiently prominent and readily seen, (b) in text that can be easily read and understood
21   by the reader, and (c) placed on the webpage in a position in Direct Proximity to the offer, term
22   or limitation.

23           If placing the statement, disclosure, or other information on the same webpage does not
24   allow such statement, disclosure, or other information to be readily noticeable and
25   understandable, such statement, disclosure, or other information shall be placed on a webpage
26   which is no more than one hyperlink from the webpage where the offer, term or limitation to

1  which it relates appears.  In such situation where a hyperlink is used to lead to a disclosure, the

2  link shall be (a) sufficiently prominent and readily seen, (b) in text that can be easily read and

3  understood by the reader, and (c) placed on the same webpage where the offer, term or

4  limitation to which is relates appears, in a position in Direct Proximity to the offer, term or

5  limitation.  However, with regards to a consumer entering into a Negative Option Offer or

6  Negative Option Plan, the following must be placed on the same webpage as the offer, term or

7  limitation to which it relates, and shall not be included in a hyperlink; (a) notification that the

8  Negative Option Offer or Negative Option Plan  requires that the consumer will receive

9  additional goods or services that are generally identified (e.g. Advanced-Level Language

10  Learning CDs), and will incur an obligation to pay additional amounts for the additional goods

11  or services if the consumer does not take affirmative action to cancel within a certain amount

12  of time; (b) the frequency of each shipment for all initial and additional goods and services; (c)

13  the frequency and cost of each installment for all initial and additional goods or services; (d)

14  the amount of time within which affirmative action to cancel must be taken by the consumer to

15  avoid billing; (e) the process which the consumer must use to initiate the process to cancel; and

16  (f) any costs to the consumer associated with returning goods or services.

17      Further, a disclosure of information is not Clear and Conspicuous if, among other

18  things, it is obscured by the background against which it appears, or the net impression of the

19  statement, disclosure, or other information is inconsistent with, contrary to, or in mitigation of

20  the disclosure itself.  Statements of limitation must be set out in close conjunction and

21  proximity with the benefits described such that they are readily noticeable, readable and

22  understandable or with appropriate captions of such prominence that statements of limitation

23  are not minimized, rendered obscure, presented in an ambiguous fashion, or intermingled with

24  the context of the statement so as to be confusing or misleading.

25      (e)   "Consumer Protection Law" means the Washington Consumer

26  Protection Act, RCW 19.86 et seq and the Unsolicited Goods Act, RCW 19.56.020.

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

5

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1        (f)    "Continuity Plan(s)" means an offer or plan in which the consumer

2 agrees in advance to receive periodic shipments of goods or provision of services, and the

3 consumer will continue to receive shipments or services and incur charges until the consumer

4 takes steps to cancel the offer or plan. For purposes of this Consent Decree, a Continuity Plan

5 shall be considered a Negative Option Offer or a Negative Option Plan.

6        (g)    "Direct Proximity" means that a term is disclosed immediately above,

7 beneath or adjacent to the relevant content.

8        (h)    The "Effective Date" of this Consent Decree shall mean the date the

9 United States District Court, Western District of Washington, approves the terms of this

10 Consent Decree, unless otherwise noted.

11        (i)    "Express Informed Consent" shall mean affirmative consent expressly

12 indicated by a consumer to enter into a Negative Option Offer or Negative Option Plan after

13 Clear and Conspicuous disclosure of all material facts, terms and conditions of the Negative

14 Option Offer or Negative Option Plan. A pre-checked box shall not be considered evidence of

15 Express Informed Consent.

16        (i)    In order to constitute Express Informed Consent, it shall also be

17 required that the consumer performs additional affirmative actions as follows:

18        A.    For all written offers (including through the Internet or

19 other web-based applications or services): the consumer must affirmatively sign, click a button

20 or electronically sign in order for the consumer to accept a Negative Option Offer or enter into

21 a Negative Option Plan. Immediately above such signature line, button or electronic signature,

22 Defendants shall Clearly and Conspicuously disclose that, in addition to the initial offer, the

23 consumer is agreeing that he or she will be obligated to receive and pay additional amounts for

24 generally identified additional goods or services (e.g. Advanced-Level Language Learning

25 CDs) and that the financial account, credit card, or debit card provided by the consumer to

26

6

1 | Defendants will automatically be billed, if the consumer does not take affirmative action to
2 | cancel within a certain amount of time.

3 |             B.      For all oral offers and Saves: a recording of the entire
4 | transaction, including the sales representations, evidencing the consumer's clear, unambiguous,
5 | and unequivocal agreement to accept or continue the Negative Option Offer or enter into the
6 | Negative Option Plan. The recording must demonstrate that the Defendants have Clearly and
7 | Conspicuously disclosed all material facts, terms and conditions of the Negative Option Offer
8 | or Negative Option Plan, including but not limited to the following: (1) notification that the
9 | Negative Option Offer or Negative Option Plan requires that the consumer will receive
10 | additional goods or services and will incur an obligation to pay additional amounts for the
11 | additional goods or services if the consumer does not take affirmative action to cancel within a
12 | certain amount of time; (2) the description of each initial and additional good or service that is
13 | part of the Negative Option Offer or Negative Option Plan if the consumer does not take any
14 | action to cancel after their initial Express Informed Consent; (3) the total price of each initial
15 | and additional good or service that is part of the Negative Option Offer or Negative Option
16 | Plan; (4) the frequency of each shipment for all initial and additional goods and services; (5)
17 | the frequency and cost of each installment for all initial and additional goods or services; (6)
18 | the amount of time within which affirmative action to cancel must be taken by the consumer to
19 | avoid billing; (7) refund, return, or cancellation policies; (8) the process which the consumer
20 | must use to cancel; and (9) any costs to the consumer associated with returning goods or
21 | services. From the Effective Date of this Consent Decree, forward, Defendants shall hold and
22 | maintain all such recordings for a period of three (3) years, and if Plaintiff or the consumer
23 | requests a copy of such recording, Defendants shall provide a copy of the recording to Plaintiff
24 | or the consumer within fifteen (15) days of the request.

25 |             (j)      "Free-to-pay Conversion Offer(s)" and/or "Free-to-pay Conversion
26 | Plan(s)" means an offer or agreement or a contractual plan or arrangement to sell or provide any

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR                                    7                    ATTORNEY GENERAL OF WASHINGTON
                                                                                        Consumer Protection Division
                                                                                        800 Fifth Avenue, Suite 2000
                                                                                        Seattle, WA  98104-3188
                                                                                        (206) 464-7745

1   goods or services, under which a consumer receives a good or service for free or for a nominal

2   amount for an initial or some other period of time and will incur an obligation to pay for or pay

3   additional amounts for the goods or services or additional goods or services if the consumer does

4   not take affirmative action to cancel before the end of the initial or some other period of time.

5   For purposes of this Consent Decree, a Free-to-pay Conversion Offer or a Free-to-pay

6   Conversion Plan shall be considered a Negative Option Offer or Negative Option Plan.

7           (k)    "Language Learning Method" means any goods or services related to

8   Defendants' Pimsleur language learning method.

9           (l)    A "material fact(s)," "material term(s)," "material condition(s)," or any

10  similar phrase or combination of words or phrases is any fact, condition or term that, if known and

11  understood by the consumer, would have been important to a consumer making a purchasing

12  decision. A "material limitation" means a term or condition that necessarily affects a consumer's

13  ability to obtain an offer as advertised. With regards to a consumer entering into a Negative Option

14  Offer or Negative Option Plan, "material fact(s)," "material term(s)," "material condition(s)," or

15  any similar phrase or combination of words or phrases also include, but are not limited to, (i)

16  notification that the Negative Option Offer or Negative Option Plan  requires that the consumer

17  will receive additional goods or services that are generally identified (e.g. Advanced-Level

18  Language Learning CDs), and will incur an obligation to pay additional amounts for the additional

19  goods or services if the consumer does not take affirmative action to cancel within a certain amount

20  of time; (ii) the frequency of each shipment for all initial and additional goods and services; (iii) the

21  frequency and cost of each installment for all initial and additional goods or services; (iv) the

22  amount of time within which affirmative action to cancel must be taken by the consumer to avoid

23  billing; (v) refund, return, or cancellation policies; (vi) the process which the consumer must use to

24  cancel; and (vii) any costs to the consumer associated with returning goods or services.

25          (m)    "Negative Option Offer(s)" and/or "Negative Option Plan(s)" means, in

26  an offer or agreement to sell or provide any goods or services, a provision under which the

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

1  consumer's silence or failure to take an affirmative action to reject goods or services or to
2  cancel the agreement is interpreted by Defendants as acceptance of the offer, including but not
3  limited to, any and all Free-to-pay Conversion Offers and Free-to-pay Conversion Plans, Pre-
4  Notification Negative Option Plans, Continuity Plans, and Automatic Renewal Plans.

5        (n)     "Pre-Notification Negative Option Plan(s)" means an offer or plan in
6  which a consumer receives periodic notices offering goods or services and will receive the
7  goods or services and incur a charge unless the consumer specifically rejects the offer or plan.
8  For purposes of this Consent Decree, a Pre-Notification Negative Option Plan shall be
9  considered a Negative Option Offer or Negative Option Plan.

10       (o)     "Save(s)" means the process, or the result of a process, employed by
11 Defendants to retain a consumer as a customer in a Negative Option Offer or Negative Option
12 Plan, when the consumer contacts Defendants to cancel or inquire about his or her account, plan,
13 or arrangement during a Negative Option Offer or Negative Option Plan, and Defendants attempt
14 to retain the consumer as a customer in a Negative Option Offer or Negative Option Plan.

15                          **II.   INJUNCTIONS**

16       2.1    Injunctions as to IO.  Upon the Effective Date of this Consent Decree, IO and
17 its successors, assigns, transferees, officers, agents, servants, employees, representatives,
18 attorneys, independent contractors, and all other persons or entities acting on IO's behalf
19 and/or in active concert or participation with IO, including but not limited to their affiliate
20 marketers and third parties over whom IO has actual or constructive control, who are
21 authorized to provide customer services for, market, promote, advertise, offer for sale, and/or
22 sell any of IO's goods or services, and/or who are involved in any way with addressing
23 consumer complaints, and/or who are involved in any way with designing or maintaining IO's
24 websites that sell goods or services, shall be permanently and forever enjoined, restrained and
25 bound from directly or indirectly engaging in the prohibited practices set forth herein and
26

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

1    further permanently required to directly or indirectly satisfy the affirmative requirements set

2    forth herein:

3            (a)     In connection with the marketing, promoting, advertising, sale, offering

4    for sale, or distribution of goods or services through a Negative Option Offer or Negative

5    Option Plan, and/or displaying or offering on any website that is owned, operated, and/or

6    controlled by IO (herein referred to as "IO's websites") or on any third-party website over

7    which IO has actual or constructive control that is engaged in marketing, promoting,

8    advertising, selling, offering for sale or distribution any of IO's goods or services any offer or

9    plan for goods or services involving a Negative Option Offer or Negative Option Plan, IO shall

10    obtain the consumer's Express Informed Consent to any such Negative Option Offer or

11    Negative Option Plan as defined in Paragraph 1.3(i) above herein.

12            (b)     In connection with the marketing, promoting, advertising, sale, offering

13    for sale, or distribution of goods or services through a Negative Option Offer or Negative

14    Option Plan, and/or displaying or offering on any of IO's websites or on any third-party

15    website over which IO has actual or constructive control that is engaged in marketing,

16    promoting, advertising, selling, offering for sale or distribution any of IO's goods or services

17    any offer or plan for goods or services involving a Negative Option Offer or Negative Option

18    Plan, IO shall Clearly and Conspicuously disclose material facts, terms and conditions of the

19    Negative Option Offer or Negative Option Plan, including, but not limited to, the following:

20            (i)     notification that the Negative Option Offer or Negative Option

21    Plan requires that the consumer will receive additional goods or services that are generally

22    identified (e.g. Advanced-Level Language Learning CDs), and will incur an obligation to pay

23    additional amounts for the additional goods or services if the consumer does not take

24    affirmative action to cancel within a certain amount of time;

25

26

CONSENT DECREE             10        ATTORNEY GENERAL OF WASHINGTON
CASE NO. 2:14-cv-01451-JLR                 Consumer Protection Division
                                      800 Fifth Avenue, Suite 2000
                                        Seattle, WA 98104-3188
                                         (206) 464-7745

1        (ii)    the description of each initial and additional good or service that

2    is part of the Negative Option Offer or Negative Option Plan if the consumer does not take any

3    action to cancel after the initial Express Informed Consent;

4        (iii)    the frequency of each shipment for all initial and additional

5    goods and services;

6        (iv)    the frequency and cost of each installment for all initial and

7    additional goods or services;

8        (v)    the amount of time within which affirmative action to cancel

9    must be taken by the consumer to avoid billing;

10        (vi)    refund, return, or cancellation policies;

11        (vii)    the process which the consumer must use to cancel; and

12        (viii)    any costs to the consumer associated with returning goods or

13    services.

14        (c)    IO shall not transmit, use or charge, directly or indirectly, any

15    consumer's financial Account Information for any purpose other than the purpose for which

16    the consumer has given Express Informed Consent.

17        (d)    When offering or selling its goods and services on or through the

18    Internet or other web-based applications which include a Negative Option Offer or Negative

19    Option Plan, if IO includes a billing summary on a webpage at the conclusion of the

20    consumer's order, such billing summary shall Clearly and Conspicuously disclose material

21    facts, terms and conditions of the Negative Option Offer or Negative Option Plan, including,

22    but not limited to, the following:

23        (i)    notification that the Negative Option Offer or Negative Option

24    Plan requires that the consumer will receive additional goods or services that are generally

25    identified (e.g. Advanced-Level Language Learning CDs), and will incur an obligation to pay

26

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

11

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

1   additional amounts for the additional goods or services if the consumer does not take

2   affirmative action to cancel within a certain amount of time;

3                (ii)    the description of each initial and additional good or service that

4   is part of the Negative Option Offer or Negative Option Plan if the consumer does not take any

5   action to cancel after the initial Express Informed Consent;

6                (iii)    the frequency and cost of each installment for all initial and

7   additional goods or services;

8                (iv)    the total price (defined as the total cost to the consumer after

9   adding up any partial payments) of each initial and additional good or service that is part of the

10   Negative Option Offer or Negative Option Plan;

11               (v)    the amount of time within which affirmative action to cancel

12   must be taken by the consumer to avoid billing;

13               (vi)    refund, return, or cancellation policies;

14              (vii)    the process which the consumer must use to cancel; and

15             (viii)    any costs to the consumer associated with returning goods or

16   services.

17         (e)    For all Negative Option Offers or Negative Option Plans, IO shall

18   confirm in writing a consumer's order prior to shipping the initial goods or services.  For

19   purposes of this Paragraph, "confirm" and/or "confirmation" shall mean (i) sending an email to

20   the email address provided by the consumer at the time of his or her order, when an email

21   address is provided to IO by the consumer; or (ii) for all other orders, mailing an order

22   summary to the address provided by the consumer within twenty four (24) hours of the

23   consumer placing the order, but in no case less than thirty (30) days prior to any date required

24   by IO for the consumer to send notice to IO that IO should not send or provide additional

25   goods or services to the consumer beyond, or in addition to, the goods or services to be initially

26   received by the consumer under the offer or plan.  Such confirmation shall Clearly and

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

12

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1    Conspicuously disclose material facts, terms and conditions of the Negative Option Offer or

2    Negative Option Plan, including, but not limited to, the following:

3            (i)     notification that the Negative Option Offer or Negative Option

4    Plan requires that the consumer will receive additional goods or services that are generally

5    identified (e.g. Advanced-Level Language Learning CDs), and will incur an obligation to pay

6    additional amounts for the additional goods or services if the consumer does not take

7    affirmative action to cancel within a certain amount of time;

8            (ii)    the description of each initial and additional good or service that

9    is part of the Negative Option Offer or Negative Option Plan if the consumer does not take any

10   action to cancel after the initial Express Informed Consent;

11           (iii)   the frequency and cost of each installment for all initial and

12   additional goods or services;

13           (iv)   the total price (defined as the total cost to the consumer after

14   adding up any partial payments) of each initial and additional good or service that is part of the

15   Negative Option Offer or Negative Option Plan;

16           (v)    the amount of time within which affirmative action to cancel

17   must be taken by the consumer to avoid billing;

18           (vi)   refund, return, or cancellation policies;

19           (vii)  the process which the consumer must use to cancel; and

20           (viii)  any costs to the consumer associated with returning goods or

21   services.

22           Notwithstanding the foregoing, IO shall not have to provide a

23   confirmation if, despite a request from IO, the consumer has not and/or will not provide an

24   email address and a mailed confirmation would arrive at the same time as a shipment

25   containing an order summary.

26

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

13

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1          (f)     IO shall honor any stated or published cancellation, return and/or refund

2  policies.

3          (g)     For all Negative Option Offers or Negative Option Plans, IO shall

4  Clearly and Conspicuously disclose, display and label procedures on IO's websites that permit

5  the consumer to (i) cancel and stop any recurring shipments; (ii) cancel and stop any recurring

6  charges; (iii) return goods or services during any trial period; and (iv) request refunds for any

7  of IO's goods or services.   IO shall not impede the effective operation of cancellation

8  procedures and shall employ cancellation procedures that allow the consumer to effectively

9  cancel any and all Negative Option Offers or Negative Option Plans.  If IO requires consumers

10  to request a refund or cancel a Negative Option Offer or Negative Option Plan through the use

11  of a phone number, IO shall include a toll-free number.

12          (h)     IO shall not impede the consumer's ability to return goods or services to

13  IO during a "free", "no risk", "risk free", or initial trial period.  IO shall accept all returns of

14  goods or services made by a consumer during a "free", "no risk", "risk free", or initial trial

15  period, regardless of the shipping method used, and as long as IO can reasonably identify the

16  sender and the products being returned. IO shall permit return of goods or services in

17  accordance with the disclosed return terms and conditions of IO.

18          (i)     If IO offers goods or services for "free," "risk free," at "no risk," or with

19  other words that have substantially the same meaning, to consumers, the offered goods or

20  services shall be free, risk free, and at no risk to the consumer.

21          (j)     IO shall not charge a restocking fee, restocking charge or liquidated

22  damages fee for the return of goods or services during any "free," "risk free," "no risk," or

23  other trial period, or other similarly-denominated trial period. After any "free," "risk free," "no

24  risk," or other similarly-denominated trial period, IO may charge a restocking fee, restocking

25  charge or liquidated damages fee only if (i) IO does not charge the consumer for the purchase

26  of the good or service being returned; or (ii) in the case that IO has charged the consumer for

CONSENT DECREE                          14                ATTORNEY GENERAL OF WASHINGTON
CASE NO. 2:14-cv-01451-JLR                                  Consumer Protection Division
                                                                    800 Fifth Avenue, Suite 2000
                                                                  Seattle, WA  98104-3188
                                                                      (206) 464-7745

1    the purchase of the good or service being returned, IO will provide a full refund of any monies

2    IO charged to the consumer for the purchase of the good or service being returned within

3    fourteen (14) days of IO receiving the returned good or service.   Such restocking fee,

4    restocking charge or liquidated damages fee shall not exceed 10% of the price of the good or

5    service ordered by the consumer, if such fee or charge and the amount of such fee or charge are

6    allowed by law.  Any restocking fee or charge or liquidated damages fees must be Clearly and

7    Conspicuously disclosed to the consumer prior to the consumer incurring any financial

8    obligation.

9              (k)      In attempting to Save a consumer who contacts IO regarding a Negative

10   Option Offer or Negative Option Plan, IO shall not engage in any conduct which would

11   constitute a violation of the Consumer Protection Law, including, but not limited to, the

12   following:

13              (i)      Making any misrepresentations, engaging in any deceptive

14   conduct, and/or engaging in any conduct in which may cause a likelihood of confusion or

15   misunderstanding;

16              (ii)     Failing to obtain the consumer's Express Informed Consent to

17   any material additions, modifications or changes to his or her purchase(s), order(s) and/or

18   subscription(s);

19              (iii)    Failing to Clearly and Conspicuously disclose to the consumer

20   all material facts, terms and conditions related to any additions, modifications or changes to the

21   consumer's initial purchase(s), order(s) and/or subscription(s) to IO's goods or services,

22   including, but not limited to, the price of the such products or services, the existence of a free

23   trial period, if any, and the duration and termination date thereof; and

24              (iv)     If requested by the consumer, failing to confirm any additions,

25   modifications or changes to the consumer's purchase(s), order(s) and/or subscription(s) via e-

26   mail, or via regular mail when an email address is not provided to IO by the consumer, as set

1    forth in Paragraph 2.1(e) herein above. In addition, regardless of whether the consumer

2    requests written confirmation, IO shall confirm any additions, modifications or changes to the

3    consumer's purchase(s), order(s) and/or subscription(s) via e-mail, as set forth in Paragraph

4    2.1(e) herein above, if the expiration date for a trial period has been extended. From the

5    Effective Date of this Consent Decree, forward, IO shall hold and maintain all recordings

6    related to attempts to Save a consumer who contacts IO regarding a Negative Option Offer or

7    Negative Option Plan for a period of three (3) years, and if Plaintiff or the consumer requests a

8    copy of such recording, IO shall provide a copy of the recording to Plaintiff or the consumer

9    within fifteen (15) days of the request.

10           (l)       IO shall include an invoice in all shipments containing goods or services

11    delivered to the consumer. The invoice shall be included with the shipment of goods or

12    services in a manner and location such that the invoice is sufficiently noticeable to the

13    consumer compared to any items or documents contained with the shipment, and is readily

14    apparent to the consumer. The invoice shall Clearly and Conspicuously disclose material facts,

15    terms and conditions of the Negative Option Offer or Negative Option Plan, including, but not

16    limited to, the following:

17           (i)       notification that the Negative Option Offer or Negative Option

18    Plan requires that the consumer will receive additional goods or services that are generally

19    identified (e.g. Advanced-Level Language Learning CDs), and will incur an obligation to pay

20    additional amounts for the additional goods or services if the consumer does not take

21    affirmative action to cancel within a certain amount of time;

22           (ii)      the frequency and cost of each installment for all initial and

23    additional goods or services;

24           (iii)     the total price (defined as the total cost to the consumer after

25    adding up any partial payments) of each initial and additional good or service that is part of the

26    Negative Option Offer or Negative Option Plan;

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

16

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1            (iv)    the procedure for a consumer to cancel any of IO's goods or

2 services, and the toll-free number, if applicable, for consumers which can be used to cancel;

3            (v)    the procedure for a consumer to return IO's goods or services, as

4 well as any costs or fees associated with the return, if any exist and are authorized by the terms

5 of this Consent Decree; and

6            (vi)    the time period within which the consumer must cancel and

7 return the product or service in order to avoid being charged for it.

8        (m)    IO shall not engage in any conduct, including collection activities, which

9 are in violation of the Consumer Protection Law, including but not limited to the following:

10            (i) Misrepresenting the character, amount or legal status of the

11 consumer's debt to Defendants;

12            (ii) Threatening to take any action that cannot legally be taken or is not

13 intended to be taken; and

14            (iii) Using a Social Security Number, whether real or fictitious, full or

15 partial, in collection notices to consumers, including, but not limited to, captioning collection

16 letters with "SSN *** ** ****," or otherwise use any number or other information of a

17 consumer in a manner intended to convey that IO may take action using that number or

18 information that cannot legally be taken or that has never been taken as a matter of IO's

19 practice. Defendants shall not use or disclose a Social Security Number of any person or a Tax

20 Identification Number of any entity which use or disclosure would be contrary to any law,

21 regulation or rule.

22        (n)    IO shall not impede the effective, simple operation of disclosed

23 cancellation procedures which allow a consumer to effectively cancel their participation in the

24 Negative Option Offer or Negative Option Plan and stop any recurring charges to the

25 consumer. IO shall provide simple cancellation procedures to consumers, and Defendants shall

26

CONSENT DECREE
CASE NO.  2:14-cv-01451-JLR

17

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

1  not create unfair or deceptive barriers to cancellation of any Negative Option Offer or Negative
2  Option Plan.

3          (o)    IO shall not make any misrepresentations, cause a likelihood of confusion
4  or misunderstanding, or omit material facts, terms and/or conditions in the context or the
5  advertising, marketing, sales or invoicing of goods or services, including but not limited to
6  misrepresentations regarding or related to the price of goods or services, price reductions, the
7  amount of risk involved, the urgency of an offer, including its limited duration, or any limitations
8  as to the time in which the consumer needs to act in order to obtain the represented terms.

9          (p)    IO shall not make any misrepresentations, cause a likelihood of
10  confusion or misunderstanding, or omit material facts, terms and/or conditions of any Negative
11  Option Offer or Negative Option Plan with regard to any invoices, billing documents, shipping
12  documents or other statements, including but not limited to, misrepresenting that the
13  consumer's cost for a good or service is less than it actually is, or misrepresenting that a
14  consumer's total order is "$0" in its invoices, billing documents or other statements, whether
15  written, electronic or oral.

16          (q)    IO shall comply with the Consumer Protection Law and any applicable
17  future amendments thereto.

18          (r)    IO shall comply with any applicable provisions of ROSCA, any future
19  amendments, or any decisions by an agency or court of competent jurisdiction that are binding
20  in the State of Washington, and that relate to ROSCA.

21      2.2    <u>Injunctions as to Roitman.</u>

22          (a)    Roitman shall comply with the Consumer Protection Law and any
23  applicable future amendments thereto; and shall be permanently and forever enjoined,
24  restrained, and bound from any violation thereof or participating in or directing any violation
25  thereof.

26

CONSENT DECREE
CASE NO.  2:14-cv-01451-JLR

18

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

1           (b)    Roitman shall comply with any applicable provisions of ROSCA, any

2 future amendments, and any decisions by an agency or court of competent jurisdiction that are

3 binding in the State of Washington, and that relate to ROSCA; and shall be permanently and

4 forever enjoined, restrained, and bound from any violation thereof or participating in or

5 directing any violation thereof.

6        2.3    IO agrees to adopt and implement the following policies and procedures with

7 respect to any Negative Option Offer or Negative Option Plan with regard to goods and

8 services if and to the extent not already the existing practice of IO:

9           (a)    Within five (5) business days of the Effective Date of this Consent

10 Decree, IO shall deliver copies of this Consent Decree, the Consumer Protection Law and

11 ROSCA to all of IO's current officers and senior management employees, who are responsible

12 for creating policies regarding: customer services for, marketing, promoting, advertising,

13 offering for sale, and/or selling any of IO's goods or services sold by a Negative Option Offer

14 or Negative Option Plan, addressing consumer complaints, and/or designing or maintaining

15 IO's websites.

16           (b)    For a period of four (4) years following the Effective Date of this

17 Consent Decree, IO shall also deliver copies of this Consent Decree, the Consumer Protection

18 Law, and ROSCA to all of IO's future officers and senior management employees, who are

19 responsible for creating policies regarding: customer services for, marketing, promoting,

20 advertising, offering for sale, and/or selling any of Defendant's goods or services sold by a

21 Negative Option Offer or Negative Option Plan, addressing consumer complaints, and/or

22 designing or maintaining Defendant's websites, within five (5) business days of such persons

23 or entities commencing a relationship with IO.

24           (c)    IO shall maintain measures reasonably necessary to ensure that their

25 Representatives, which for purposes of Paragraph 2.3 shall mean IO's officers and

26 management employees, and any employees, representatives and agents, and all other persons

CONSENT DECREE                          19               ATTORNEY GENERAL OF WASHINGTON
CASE NO. 2:14-cv-01451-JLR                                  Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1   or entities acting on IO's behalf, who interact with consumers in any capacity or who are

2   responsible for creating and implementing policies regarding:  customer services, marketing,

3   promoting, advertising, offering for sale, and/or selling any of IO's goods or services sold by a

4   Negative Option Offer or Negative Option Plan, addressing consumer complaints, and

5   designing or maintaining IO's websites, are properly trained and are otherwise performing

6   their duties in compliance with this Consent Decree and all applicable laws, including, but not

7   limited to, the Consumer Protection Law and ROSCA.  IO shall further adhere to a policy of

8   disciplining, up to and including the termination of, Representatives who are found to have not

9   complied with the requirements of this Consent Decree and/or all applicable laws, including,

10   but not limited to, the Consumer Protection Law and ROSCA.

11         (d)   IO shall keep for a period of four (4) years written records for each

12   report of, and its response to, any notification that their Representatives are in violation of the

13   requirements of this Consent Decree and/or all applicable laws, including, but not limited to,

14   the Consumer Protection Law and ROSCA.

15         (e)   Unless otherwise noted herein, IO shall create and implement written

16   policies and adopt and implement written procedures reasonably expected to create continuing

17   compliance and otherwise comply with any and all terms of this Consent Decree within thirty

18   (30) days after the Effective Date of this Consent Decree.

19         (f)   IO shall maintain policies and procedures reasonably necessary to

20   ensure consumer complaints are responded to and a good faith effort is made to resolve such

21   complaints in a timely manner.  Such policies shall include, but are not limited to:

22         (i)   Policies and procedures reasonably necessary to ensure that

23   consumer complaints are logged, with such log containing the following minimum

24   information:  the name and account number (or other identifying information) of such

25   consumer, a summary of the consumer's complaint, including, but not limited to, whether the

26   consumer complained that he or she had been charged for an unordered good or service,

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

20

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1  whether the consumer complained of an unauthorized charge or whether the consumer

2  complained that he or she had received an unordered good or service, and action taken by IO to

3  resolve that complaint and to determine the Representative involved in such complaint if

4  applicable, and a summary of action, if any, taken by IO with regards to such Representative.

5  IO shall retain all such records and logs for a minimum of four (4) years; and

6         (ii)    Policies and procedures necessary to generally ensure that

7  consumer complaints to IO are answered in a timely manner.

8         (g)    If at any time after the Effective Date of this Consent Decree, IO is

9  advised by a consumer, Plaintiff or through any other means, that a Representative has (i)

10  failed to adopt, comply with and/or implement IO's policies and procedures; (ii) failed to

11  comply with this Consent Decree; and/or (iii) failed to comply with and abide by all applicable

12  laws, including, but not limited to, the Consumer Protection Law and ROSCA, IO shall

13  immediately notify said Representative of its deficiency and further warn that punitive action

14  will be taken unless such compliance is immediately forthcoming.  IO shall take documented

15  punitive action, up to and including termination of any Representative reasonably determined

16  to have failed to comply with IO's policies and procedures, this Consent Decree and/or all

17  applicable laws, including, but not limited to, the Consumer Protection Law and ROSCA. IO

18  shall retain all records of punitive actions taken against non-complying Representatives for a

19  minimum of four (4) years.

20  ### III.    REQUIRED PAYMENTS

21       3.1    IO shall be liable for and shall pay a total of One Million Two Thousand and

22  00/100 Dollars ($1,002,000.00) (herein referred to as "Required Payment(s)") to the

23  Pennsylvania Office of Attorney General, the New York Office of Attorney General and the

24  Washington Office of Attorney General (herein referred to as the "State(s)") as provided in the

25  related consent petition being filed of record in Court of Common Pleas of Philadelphia

26

CONSENT DECREE
CASE NO.  2:14-cv-01451-JLR

21

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

County in the matter captioned *Commonwealth of Pennsylvania v. Internet Order LLC d/b/a Stroll et al. and Daniel Roitman*, No. 02866 (the "PA Consent Petition"). As provided in the PA Consent Petition, the single Required Payment shall be made in two (2) installments as follows: (i) the first payment, in the amount of Eight Hundred Seventy-Seven Thousand and 00/100 Dollars ($877,000.00), shall be made by IO upon IO's execution of this Consent Decree; and (ii) the second payment, in the amount of One Hundred Twenty-Five Thousand and 00/100 Dollars ($125,000.00), shall be made by IO on or before November 1, 2015. In the event that the PA Consent Petition is not approved by the Court of Common Pleas of Philadelphia County in the matter captioned *Commonwealth of Pennsylvania v. Internet Order LLC d/b/a Stroll et al. and Daniel Roitman*, No. 02866 (hereinafter "Pennsylvania Consent Petition Approval") within ninety (90) days of the date of IO's execution of the Consent Petition in the aforementioned matter, any and all payments submitted by IO shall be returned to IO, provided that IO shall re-submit such payments within ten (10) days of Pennsylvania Consent Petition Approval. All payments shall be made by certified check, cashier's check, attorney's check, or money order, made payable to the Commonwealth of Pennsylvania, and forwarded to Sarah A. E. Frasch, Senior Deputy Attorney General, Pennsylvania Office of Attorney General, Bureau of Consumer Protection, 21 S. 12th Street, 2nd Floor, Philadelphia, Pennsylvania 19107. The Commonwealth of Pennsylvania (hereinafter "The Commonwealth") shall deposit the Required Payments in an interest-bearing trust account (herein referred to as the "Settlement Fund"). Any interest earned on amounts held in the Settlement Fund shall become part of the Settlement Fund. Defendants shall have no property right, interest, claim, control over or title to the Settlement Fund, the Required Payments, or any interest earned thereon after the date of the Pennsylvania Consent Petition

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

22

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

Approval.    The obligation of IO to pay restitution, civil penalties or costs pursuant to the Consumer Protection Law to the Washington Office of Attorney General, and pursuant to the consumer protection laws of the Commonwealth to the Pennsylvania Office of the Attorney General and pursuant to the consumer protection laws of the State of New York to the Office of Attorney General related to Defendants' conduct, acts or omissions occurring prior to the Effective Date of this Consent Decree which were specifically asserted in Plaintiff's Complaint under the Consumer Protection Law and ROSCA, and any similar consumer protection or other applicable law, rule or regulation specifically asserted in Plaintiff's Complaint, shall be limited to the above referenced Required Payments under the PA Consent Petition in the amount of One Million Two Thousand and 00/100 Dollars ($1,002,000.00) and to the Conditional Monetary Payments which IO is required to pay pursuant to Section IV herein. The obligation of IO to pay restitution, civil penalties or costs to the States shall be limited to the amounts payable to the Commonwealth of Pennsylvania, as stated in the PA Consent Petition, and no additional monetary obligation shall be deemed payable independently arising from this Consent Decree. However, nothing in this Consent Decree shall prevent or restrict Plaintiff from pursuing sanctions and other appropriate relief, including civil penalties, in any action against Defendants for contempt or failure to comply with any of the provisions of this Consent Decree, or in the event that Defendants are in default of any of the terms and conditions of this Consent Decree.

3.2    The States of Washington and New York have designated Dahl Administration LLC as the claims administrator (herein referred to as the "Claims Administrator"). The Claims Administrator shall be responsible for the administration of the Settlement Fund and

CONSENT DECREE
CASE NO.  2:14-cv-01451-JLR

23

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1    the distribution of the Settlement Fund in accordance with the terms and conditions described

2    more fully herein.

3        3.3    Upon Pennsylvania Consent Petition Approval, IO shall enter into an agreement

4    with the Claims Administrator which shall state the duties and responsibilities of IO and the

5    Claims Administrator, upon the terms and conditions as set forth in Section III herein (herein

6    referred to as the "Claims Administrator Agreement"). The Claims Administrator Agreement

7    shall be subject to the written approval of the States. Any and all costs and expenses incurred

8    by, charged by or related to the Claims Administrator in administering and distributing the

9    Settlement Fund shall be paid by the Settlement Fund (herein referred to as the "Claims

10   Administrator Expenses"). However, the parties hereto agree that the Claims Administrator

11   Agreement shall specifically state that the Claims Administrator shall not charge in excess of

12   Thirty-Five Thousand and 00/100 Dollars ($35,000.00) for Claims Administrator Expenses and

13   that no party hereto nor the Settlement Fund shall be responsible for paying or have any

14   obligation to pay the Claims Administrator any amount in excess of Thirty-Five Thousand and

15   00/100 Dollars ($35,000.00). ). The Claims Administrator Agreement shall indicate that the

16   Settlement Fund is to be transferred to the Claims Administrator for distribution as set forth

17   herein at the appropriate time as determined by the Commonwealth. However, the transfer of

18   the Settlement Fund by the Commonwealth to the Claims Administrator shall not occur earlier

19   than (i) March 15, 2016 or (ii) one hundred and twenty (120) days after the date of the

20   Pennsylvania Consent Petition approval, whichever date is later.

21       3.4    Plaintiff shall have no liability whatsoever to Defendants, the Claims

22   Administrator, or to any claimants in connection with the administration of the claims process.

23       3.5    Categories of Consumers Defined.

24           (a)    "Category One Consumer(s)" shall include consumers, from all fifty

25   states of the United States, if applicable, who made an online purchase of IO's Gold Level

26   One Advanced-Level Course during the period from January 1, 2009 to April 1, 2013 through

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

24

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1   a Negative Option Offer or Negative Option Plan and who cancelled within forty-five (45)

2   days of the conclusion of the free trial period, but were charged (in whole or in part) for the

3   Gold Level One Advanced-Level Course.  Category One Consumers shall not include the

4   following consumers for whom IO can produce sufficient written or recorded documentation

5   proving the following: (i) consumers who purchased from IO one (1) or more Pimsleur

6   Language Learning Course products through a Negative Option Offer or Negative Option Plan,

7   and at a later date purchased from IO another Pimsleur Language Learning Course product

8   through a Negative Option Offer or Negative Option Plan; (ii) consumers who called IO for the

9   sole reason of requesting a different payment amount or timing of payments than the original

10   provisions of the Negative Option Offer or Negative Option Plan; (iii) consumers who called

11   IO for the sole reason of requesting cancellation due to an inability to pay as opposed to a lack

12   of understanding of the Negative Option Offer or Negative Option Plan; and (iv) consumers

13   who called IO during the trial period and decided after a discussion with IO's personnel not to

14   cancel, but then called back to cancel after the trial period.

15           (b)    "Category Two Consumer(s)" shall include all consumers from all fifty

16   states of the United States, if applicable, who are not Category One Consumers and who

17   purchased an Advanced-Level Course through a Negative Option Offer or Negative Option

18   Plan from IO during the period from January 1, 2009 to the Pennsylvania Consent Petition

19   Approval, and who either filed a consumer complaint with the Pennsylvania Office of Attorney

20   General, the Washington Office of Attorney General, or the New York Office of Attorney

21   General prior to the Pennsylvania Consent Petition Approval, and whose complaint has not

22   been fully satisfied or resolved under the sole discretion of the respective Office of Attorney

23   General, or who file a consumer complaint with the Pennsylvania Office of Attorney General,

24   the Washington Office of Attorney General, or the New York Office of Attorney General

25   within sixty (60) days after the Pennsylvania Consent Petition Approval.

26

CONSENT DECREE           25                ATTORNEY GENERAL OF WASHINGTON
CASE NO. 2:14-cv-01451-JLR                      Consumer Protection Division
                                                    800 Fifth Avenue, Suite 2000
                                                    Seattle, WA 98104-3188
                                                        (206) 464-7745

1      3.6    Within forty-five (45) days of the Pennsylvania Consent Petition Approval, IO

2    shall send to the Claims Administrator and to the States a list which shall include the name,

3    email address, and mailing address of each Category One Consumer, as well as the amount of

4    monies paid by such consumer to IO for the Gold Level One Advanced-Level Course, and the

5    amount of any credits, chargebacks, or settlement amounts already paid by IO or received by

6    such consumer.

7      3.7    Within forty-five (45) days of the Pennsylvania Consent Petition Approval, IO

8    shall send to the States a list comprised of the following for all consumers who were excluded

9    as a Category One Consumer by IO as falling under the exceptions as stated in Paragraphs

10    3.5(a)(i)-(iv): name, address, email address (if known), statement as to why the consumer was

11    excluded, and a description of the written or recorded documentation relied upon in

12    determining the exclusion.

13      3.8    Notice of claim process for Category One Consumers.  Within ten (10) days of

14    receiving the list described in Paragraph 3.6 above herein from IO, the Claims Administrator

15    shall provide to all Category One Consumers email notice of their ability to receive restitution

16    related to the cost of the Gold One Advanced-Level Course (herein referred to as the "Notice")

17    as specifically set forth in Exhibit "A", which is attached hereto and incorporated herein, and

18    which shall only be revised pursuant to a request by the States subject to IO's consent, which

19    shall not be unreasonably withheld.  Such Notice shall include a hyperlink to a claim form

20    (herein referred to as the "Claim Form") as specifically set forth in Exhibit "B", which is

21    attached hereto and incorporated herein, and which shall only be revised pursuant to a request

22    by the States, subject to IO's consent, which shall not be unreasonably withheld which Claim

23    Form will be required to be fully completed and submitted by each Category One Consumer.

24    The following shall apply to such emails:

25      (a)  · The "display name" in the email "FROM" line shall be "Pimsleur

26    Language Learning Program."

CONSENT DECREE            26            ATTORNEY GENERAL OF WASHINGTON
CASE NO. 2:14-cv-01451-JLR                 Consumer Protection Division
                                                 800 Fifth Avenue, Suite 2000
                                                 Seattle, WA 98104-3188
                                                     (206) 464-7745

1          (b)     The subject line of the email shall read "IMPORTANT LEGAL

2  NOTICE-OFFICE OF ATTORNEY GENERAL REFUND."

3          (c)     The Claims Administrator shall make reasonable efforts to avoid having

4  emails sent to "junk" or "spam" folders, or otherwise filtered.

5          (d)     If an email "bounces back," or if the consumer did not provide IO with

6  an email address, the Claims Administrator shall ascertain the consumer's most recent mailing

7  address by comparing the consumer's mailing address associated with the consumer's account

8  record with IO to the consumer's address in the USPS National Change of Address Registry

9  (herein referred to as "NCOA"). The Claims Administrator then shall provide a postcard

10  (herein referred to as the "Postcard") as specifically set forth in Exhibit "C", which is attached

11  hereto and incorporated herein, and which shall only be revised pursuant to a request by the

12  States, subject to IO's consent, which shall not be unreasonably withheld via U.S. Mail to the

13  consumer's most current address as reflected in the NCOA, if that address is different from the

14  address in IO's records, or to the address in IO's records, if the NCOA does not reflect a

15  change in the address from IO's records. Such Postcard shall include information regarding

16  the claims process along with the URL to the Claim Form.

17          (e)     If the Claims Administrator does not receive a completed claim form

18  from a Category One Consumer to whom an email was sent pursuant to Paragraph 3.8 above

19  within thirty (30) days of providing the email Notice, the Claims Administrator shall send a

20  second email to those Category One Consumers. The body of the second email shall state the

21  text as specifically set forth in Exhibit "D," which is attached hereto and incorporated herein,

22  and which shall only be revised pursuant to a request by the States subject to IO's consent,

23  which shall not be unreasonably withheld. The "display name" in the FROM line of the email

24  shall be the same as the first email Notice. The subject line of the email shall read "SECOND

25  NOTICE-IMPORTANT LEGAL NOTICE-OFFICE OF ATTORNEY GENERAL REFUND."

26

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

27

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1   3.9  The Claims Administrator shall provide and host a 24-hour, 7-days-a-week toll-

2 free telephone number to provide automated information relating to the claims process as set

3 forth herein for people who call the number.  Such telephone number shall be listed on all

4 emails and/or postcards sent to Category One Consumers as set forth above herein.

5   3.10 Eligibility of Category One Consumers.  To be "Eligible" for restitution as a

6 Category One Consumer, the Category One Consumer must fully complete the Claim Form

7 and submit the completed Claim Form within forty-five (45) days of the Claims Administrator

8 sending the Notice or mailing of the Postcard pursuant to Paragraph 3.8 above.  Any Category

9 One Consumer who fully completes the Claim Form and submits the completed Claim Form as

10 noted herein above shall be deemed an "Eligible Category One Consumer".

11   3.11 Eligibility of Category Two Consumers.  To be "Eligible" for restitution as a

12 Category Two Consumer, the Category Two Consumer must have either filed a consumer

13 complaint with the Pennsylvania Office of Attorney General, Washington Office of Attorney

14 General, or New York Office of Attorney General, prior to the Pennsylvania Consent Petition

15 Approval, and such complaint is not fully satisfied or resolved under the sole discretion of the

16 respective Office of Attorney General, or must file a consumer complaint with the

17 Pennsylvania Office of Attorney General, Washington Office of Attorney General, New York

18 Office of Attorney General, within sixty (60) days of the Pennsylvania Consent Petition

19 Approval, and such complaint must concern or relate to conduct alleged in the Complaint filed

20 in this action by Plaintiff or concern or relate to the conduct covered under this Consent

21 Decree, and such conduct must have occurred during the time period from January 1, 2009 to

22 the Pennsylvania Consent Petition Approval. Any Category Two Consumer who (i) filed/files

23 a consumer complaint as noted herein above; (ii) is not an Eligible Category One Consumer;

24 and (iii) is determined by the Claims Administrator to be Eligible based upon the Claims

25 Administrator's review of the consumer's complaint and any documentation provided to the

26 Claims Administrator by IO or the consumer, shall be deemed an "Eligible Category Two

CONSENT DECREE       28    ATTORNEY GENERAL OF WASHINGTON
CASE NO.  2:14-cv-01451-JLR          Consumer Protection Division
                          800 Fifth Avenue, Suite 2000
                          Seattle, WA  98104-3188
                          (206) 464-7745

1  Consumer." IO shall provide to the Claims Administrator, upon request by the Claims

2  Administrator, any documents or information related to any Category Two Consumer within

3  five (5) days of the request by the Claims Administrator.

4      3.12  Determination of Restitution:

5          (a)  "Restitution" for an Eligible Category One Consumer shall mean all

6  monies paid by such consumer to IO for the Gold Level One Advanced-Level Course, less any

7  credits, chargebacks, or settlement amounts already paid by IO or received by such consumer.

8          (b)  "Restitution" for an Eligible Category Two Consumer shall mean all

9  monies paid by such consumer to IO for all Advanced-Level Courses, less any credits,

10 chargebacks, or settlement amounts already paid by IO or received by such consumer, and

11 shall be determined by the Claims Administrator as noted herein.

12     3.13  Within ninety (90) days of the Pennsylvania Consent Petition Approval, the

13 States will provide to the Claims Administrator the consumer complaints filed by Category

14 Two Consumers with the States. The States will provide IO with a copy the consumer

15 complaints filed by Category Two Consumers with their respective offices within ninety (90)

16 days of the Pennsylvania Consent Petition Approval.

17     3.14  Calculation of Restitution Payment:

18         (a)  The Settlement Fund shall be used for the payment of Restitution to

19 Eligible Category One Consumers and Eligible Category Two Consumers as determined by the

20 Claims Administrator in accordance with the terms and conditions of this Consent Decree and

21 for the payment of the Claims Administrator Expenses, and any Remaining Monies, as defined

22 herein, will be payable to the States as noted herein. If the total amount of Restitution payable

23 to all Eligible Category One Consumers and Eligible Category Two Consumers is equal to or

24 less than the total amount in the Settlement Fund less the Claims Administrator Expenses, then

25 the distribution to each Eligible Category One Consumer and Eligible Category Two

26 Consumer will be the amount determined by the Claims Administrator for each such Eligible

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

29

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1  Category One Consumer and Eligible Category Two Consumer pursuant to Paragraphs 3.12(a)

2  and (b) respectively, and those amounts will be distributed by the Claims Administrator to each

3  such consumer.

4              (b)      If the total amount of Restitution payable to all Eligible Category One

5  Consumers and Eligible Category Two Consumers is more than the Settlement Fund less the

6  Claims Administrator Expenses, each Eligible Category One Consumer and Eligible Category

7  Two Consumer shall receive a distribution of a pro-rata share of the Settlement Fund less the

8  Claims Administrator Expenses.  Pro rata share means, with respect to a distribution on

9  account of any Eligible Category One Consumer and Eligible Category Two Consumer, an

10  amount determined by multiplying the total amount in the Settlement Fund less the Claims

11  Administrator Expenses by a fraction, the numerator of which shall be the amount of each such

12  consumer's Restitution and the denominator of which shall be the aggregate amount of all

13  Restitution payable to all Eligible Category One Consumers and Eligible Category Two

14  Consumers.

15              3.15    Timing and Procedures for Restitution Payments.

16              (a)      The Settlement Fund shall be transferred to the Claims Administrator for

17  distribution as set forth herein at the appropriate time as determined by the Commonwealth.

18  However, the transfer of the Settlement Fund by the Commonwealth to the Claims

19  Administrator shall not occur earlier than (i) March 15, 2016 or (ii) one hundred and twenty

20  (120) days after the date of the Pennsylvania Consent Petition Approval, whichever date is

21  later.  The Claims Administrator shall pay such Restitution payment to each Eligible Category

22  One Consumer and Eligible Category Two Consumer from the Settlement Fund no later

23  thanfifteen (15) days after the date that the Commonwealth transfers the Settlement Fund to the

24  Claims Administrator.  The Claims Administrator shall provide a check made payable to each

25  Eligible Category One Consumer and each Eligible Category Two Consumer in the amount

26

1  determined to be the Restitution payment as described above herein, accompanied by the letter

2  described in Paragraph 3.15(b) below via U.S. Mail.

3          (b)    The envelope containing the Restitution payment shall display as a

4  return address the name "Pimsleur Language Learning Program Restitution Fund" along with

5  the address of the Claims Administrator, and shall display the language "REFUND

6  ENCLOSED" on the front of the envelope. The mailing containing the Restitution payment

7  shall include a letter with the specific text as stated in Exhibit "E", which is attached hereto and

8  incorporated herein, and which shall only be revised pursuant to a request by the States subject

9  to IO's consent, which shall not be unreasonably withheld.

10      3.16   Consumers who receive payment as an Eligible Category One Consumer or an

11  Eligible Category Two Consumer shall not be required to return any of IO's goods or services.

12      3.17   IO shall cease all collection efforts with regards to any Eligible Category One

13  Consumer or Eligible Category Two Consumer; shall notify any and all credit bureaus that any

14  and all claims against such consumers are withdrawn and resolved, and shall request the credit

15  bureaus to remove the negative information related to any alleged delinquency claimed by IO;

16  and shall be prohibited from selling to a third party any debt relating to or arising from the

17  purchase of a Pimsleur Language Learning product through a Negative Option Offer or

18  Negative Option Plan by any Eligible Category One Consumer or Eligible Category Two

19  Consumer.

20      3.18   In instances where a delinquency alleged by IO is or was reported on a credit

21  report of a consumer, and (a) IO has agreed to pay a refund, reimbursement, or restitution to a

22  consumer; (b) IO waived all or part of IO's charges against a consumer; or (c) the consumer is

23  an Eligible Category One Consumer or an Eligible Category Two Consumer, IO shall request

24  the credit bureaus to remove the negative information relating to the alleged delinquency from

25  the consumer's credit report. IO shall further, upon request of an Eligible Category One

26  Consumer or an Eligible Category Two Consumer, provide written and/or electronic

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

31

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1  confirmation of IO's acknowledgement and agreement to waive all of IO's charges against

2  such consumer.

3      3.19   Any notices required or described in this section of the Consent Decree related

4  to Restitution that are directed to consumers shall not include any marketing, advertising, or

5  solicitations, and shall exclusively include the information required or described in this

6  Consent Decree.

7      3.20   Reporting Requirement. Within one hundred twenty (120) days of mailing out

8  the Restitution payments to the Eligible Category One Consumers and Eligible Category Two

9  Consumers as stated above herein, the Claims Administrator shall provide a report to the States

10  and to IO, setting forth the following information: (i) the number of Eligible Category One and

11  Eligible Category Two Consumers to which restitution was provided; (ii) the name and address

12  of each Eligible Category One Consumer and Eligible Category Two Consumer; (iii) the

13  amount of the Restitution payment for each Eligible Category One Consumer and Eligible

14  Category Two Consumer; (iv) the date that the check was sent to each Eligible Category One

15  Consumer and Eligible Category Two Consumer; (v) whether such Restitution payment was

16  returned to the Claims Administrator indicating the reason it was returned, including, but not

17  limited to, consumer no longer being at the address to which it was sent; and (vi) whether such

18  Restitution payment remains un-cashed or un-negotiated and outstanding.

19      3.21   The Claims Administrator shall make all reasonable efforts to locate consumers

20  whose Restitution payments are returned to the Claims Administrator for any reason,

21  including, but not limited to, a consumer no longer being at the address to which it was sent.

22      (a)   If a Restitution payment is sent to a consumer and is returned to the

23  Claims Administrator, the Claims Administrator shall attempt to locate the consumer's current

24  address through all reasonable means, including, but not limited to publicly-available

25  databases, Internet searches, commercially available databases, and public records.

26

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

32

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1        (b)    If a current address is found, the Claims Administrator shall re-send the

2 check to the consumer at that address.

3        (c)    If the Restitution payment is returned to the Claims Administrator and

4 no current address is available or if the Restitution payment remains un-cashed or un-

5 negotiated and outstanding for more than ninety (90) days from the issuance of the check

6 (herein referred to as "Unclaimed Restitution Payment(s)"), the Claims Administrator shall

7 submit such Unclaimed Restitution Payments along with the name, address, telephone number

8 and amount of Restitution for each such consumer to the Attorneys General Offices as follows:

9 (i) if such consumer is a resident of the Commonwealth or any state other than the States of

10 Washington or New York, such funds and information will be submitted to the Pennsylvania

11 Office of Attorney General; (ii) if such consumer is a resident of the State of New York, such

12 funds and information will be submitted to the New York Office of Attorney General; and (iii)

13 if such consumer is a resident of the State of Washington, such funds and information will be

14 submitted to the Washington Office of Attorney General.

15        (d)    The submission of such Unclaimed Restitution Payments and

16 information set forth in Paragraph 3.21(c) shall be made to the respective Attorneys General no

17 later than the due date of the Report as set forth in Paragraph 3.20.

18        (i)    Any Unclaimed Restitution Payments submitted to the

19 Pennsylvania Office of Attorney General, as set forth in Paragraph 3.21(c) above herein, will

20 be submitted as unclaimed property for each consumer in the amount to which they were

21 entitled hereunder, to the Department of Treasury or agency responsible for unclaimed

22 property in the each respective state or commonwealth in which consumer was last known to

23 be a resident or have an address.

24    3.22    The "Remaining Monies" shall mean the total amount of Required Payments

25 paid into the Settlement Fund plus any interest earned on the Settlement Fund minus the

26 Claims Administrator Expenses minus the total sum of all Restitution payable to Eligible

CONSENT DECREE            33        ATTORNEY GENERAL OF WASHINGTON
CASE NO. 2:14-cv-01451-JLR               Consumer Protection Division
                                              800 Fifth Avenue, Suite 2000
                                            Seattle, WA 98104-3188
                                            (206) 464-7745

1  Category One Consumers included on the above referenced list submitted to the Claims

2  Administrator by IO and all Restitution payable to Eligible Category Two Consumers as

3  determined by the Claims Administrator in accordance with the terms and conditions of this

4  Consent Decree. If there are any Remaining Monies, the Claims Administrator shall include a

5  written statement with the Report as set forth in Paragraph 3.20 above herein setting forth the

6  total amount of Remaining Monies. Upon the Claims Administrator submitting the Unclaimed

7  Restitution Payments to the States, the Claims Administrator shall also submit such Remaining

8  Monies in three (3) equal shares to the three (3) States, sending a check to each of the States

9  for one-third of the Remaining Monies. Such payment of the Remaining Monies to Plaintiff

10  shall be deposited in an interest-bearing account from which principal and interest shall be

11  expended for any lawful purpose designated by the Attorney General.

12  **IV.   CONDITIONAL MONETARY PAYMENT**

13      4.1    For each month during the time period starting on July 1, 2016 and ending on

14  June 30, 2019 in which IO sells a Pimsleur Language Learning product during that month, IO

15  shall be liable for and shall pay to the States a total of Eight Thousand and 00/100 Dollars

16  ($8,000.00) for that month (herein referred to as "Conditional Monetary Payments"). The

17  amount due to the States will be paid by IO to the States within ten (10) days of the last day of

18  each month during that time period. IO shall make such payments to the States by sending a

19  check to each of the States for one-third of such amount due. All payments due to Plaintiff

20  shall be made by company check, certified check, cashier's check, attorney's check, or money

21  order, made payable to the order of the "Attorney General-State of Washington" and shall be

22  sent to the Office of the Attorney General, Attention: Cynthia Lockridge, Administrative

23  Office Manager, 800 Fifth Avenue, Suite 2000, Seattle, Washington, 98104-3188.

24      4.2    For every three (3) month period during the time period starting on July 1, 2016,

25  and ending on June 30, 2019, IO shall submit to the States a written report, no later than 15 days

26  following the end of that three (3) month period, which report shall state (i) whether or not IO

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

34

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1  sold a Pimsleur Language Learning product; and (ii) a description of the products sold and the

2  total amount of each product sold during each month for that three (3) month period, if IO sold a

3  Pimsleur Language Learning product.  All payments to Plaintiff made pursuant to Paragraph 4.1

4  above herein shall be expended for any lawful purpose designated by the Attorney General.

5  **V.      NOTIFICATION TO PARTIES**

6       5.1      Any notices required to be sent to Plaintiff or Defendants by this Consent

7  Decree shall be sent by United States certified mail, return receipt requested, or other

8  nationally recognized courier service that provides for tracking services and identification of

9  the person signing for the document. The documents shall be sent to the following addresses:

10

11  For Plaintiff:                                    For Defendants:

12  Paula Selis                                       David Bateman
    Patricio Marquez                                  K&L Gates
13  Assistant Attorney General                        925 4th Ave #2900
    Attorney General of Washington                    Seattle, WA 98104
14  800 5th Ave, Suite 2000
    Seattle, WA 98104

15                                                    Roy W. Hibberd
                                                      General Counsel
16                                                    Internet Order LLC
                                                      Four Penn Center
17                                                    1600 John F. Kennedy Blvd., 3rd Floor
                                                      Philadelphia, PA 19103

18

19                                                    Gregory T. Parks
                                                      Morgan, Lewis & Bockius, LLP
20                                                    1701 Market Street
                                                      Philadelphia, PA 19103

21

22       5.2      Any party may designate a different individual or address to receive the notices

23  required to be sent by sending written notification to the other parties at least thirty (30) days before

    such change will occur identifying that individual by name and/or title and mailing address.

24  **VI.      MISCELLANEOUS TERMS**

25

26       6.1      Time shall be of the essence with regards to Defendants' obligations hereunder.

6.2     Nothing in this Consent Decree shall prevent or restrict the use of this Consent Decree by Plaintiff in any action against Defendants for contempt or failure to comply with any of its provisions, or in the event that Defendants are in default of any of its terms and conditions.   A default on the part of Defendants shall include any default or breach by Defendants of any of the terms or requirements of this Consent Decree.   Nothing in this Consent Decree shall be construed to (i) exonerate any contempt or failure to comply with any of its provisions after the Effective Date of this Consent Decree, (ii) compromise or limit the authority of Plaintiff to initiate a proceeding for any contempt or other sanctions for failure to comply, or (iii) compromise the authority of the United States District Court or any other court of competent jurisdiction to punish as contempt any violation of this Consent Decree.

6.3     Nothing in this Consent Decree shall be construed to limit the authority of Plaintiff to protect the interests of Plaintiff or the people of the State of Washington.

6.4     Upon the Effective Date of this Consent Decree and the approval by the United States District Court of all the terms and conditions of this Consent Decree and in consideration of the terms and conditions of this Consent Decree, Plaintiff hereby releases and forever discharges any and all civil claims, causes of actions, damages, restitution, fines, costs and penalties based on, arising out of or related to Defendants' conduct, acts or omissions occurring prior to the Effective Date of this Consent Decree which were specifically asserted in Plaintiff's Complaint under the Consumer Protection Law, ROSCA and any similar consumer protection or other applicable law, rule or regulation specifically asserted in Plaintiff's Complaint (herein referred to as the "Released Claims"), by the Washington State Office of the Attorney General, Consumer Protection Division, against Defendants and past and present employees, shareholders, officers, and directors of Defendants (herein individually referred to as a "Releasee" and collectively referred to as the "Releasees").   Nothing in this Consent Decree shall be construed to release or discharge any claims, causes of actions, damages, restitution, fines, costs or penalties arising out of or related to, conduct, acts or omissions of any person or entity not specifically named herein above as a

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

36

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1  Releasee. Claims, causes of actions, damages, restitution, fines, costs or penalties arising out of or

2  related to, conduct, acts or omissions of Defendants' affiliates, representatives, partners, licensors,

3  licensees, principals, agents  or assigns are not in any way released or discharged by this Consent

4  Decree. Released Claims do not include claims pursuant to any law, statute or regulation other

5  than the Consumer Protection Law, ROSCA and any similar consumer protection or other

6  applicable law, rule or regulation asserted in Plaintiff's Complaint or addressed by the terms of this

7  Consent Decree. Released Claims do not include claims pursuant to any antitrust laws,

8  environmental laws, tax laws, and criminal statutes and codes, nor do they include actions or

9  proceedings brought pursuant to Washington Consumer Protection Laws or statutes alleging

10  violations that are not addressed by Plaintiff's Complaint or the terms of this Consent Decree.

11     6.5    Nothing contained in this Consent Decree shall constitute an admission of

12  liability by Defendants of the allegations of Plaintiff's Complaint, and nothing contained in this

13  Consent Decree shall constitute a concession by Plaintiff that its claims are not well-founded.

14     6.6    Any failure of Plaintiff to exercise any of its rights under this Consent Decree

15  shall not constitute a waiver of its rights hereunder.

16     6.7    Defendants further agree to execute and deliver all authorizations, documents

17  and instruments which are reasonably necessary to carry out the terms and conditions of this

18  Consent Decree.

19     6.8    The undersigned signatory on behalf of Daniel Roitman as Chief Executive

20  Officer of Defendant, Internet Order LLC hereby states that he or she is authorized to enter

21  into and execute this Consent Decree on behalf of Defendant, Internet Order LLC.

22     6.9    Nothing in this Consent Decree shall be construed to create, waive, or limit any

23  private right of action by a consumer or a local, state, federal, or other governmental entity.

24  Further, nothing in this Consent Decree shall be construed to waive any claims of sovereign

25  immunity Plaintiff may have in any action or proceeding. The United States District Court for

26  the Western District of Washington shall maintain jurisdiction over the subject matter of this

1  Consent Decree and over Defendants for purpose of enforcement of this Consent Decree

2  and/or the Final Decree, Judgment or Order accompanying it.

3       6.10   This Consent Decree may be executed in any number of counterparts and by

4  different signatories on separate counterparts, each of which shall constitute an original

5  counterpart hereof and all of which together shall constitute one and the same document.  One

6  or more counterparts of this Consent Decree may be delivered by facsimile or electronic

7  transmission with the intent that it or they shall constitute an original counterpart hereof.

8       6.11   Plaintiff and Defendants hereby stipulate that this final Consent Decree issued

9  by the United States District Court shall act as a permanent injunction issued under U.S.C. §

10  8405(a) of ROSCA and RCW 19.86.080 of the Washington Consumer Protection Act and that,

11  subject to the specific terms and conditions stated in this Consent Decree, breach of any of the

12  terms of this Consent Decree or of the Order accompanying it shall be sufficient cause for

13  Plaintiff, by its Attorney General, to seek penalties provided for under RCW 19.86.140 of the

14  Washington Consumer Protection Act and/or any other equitable relief which the Court deems

15  necessary or proper.

16       6.12   If Plaintiff determines that Defendants have failed to comply with any of the

17  terms of this Consent Decree, and if, in the Attorney General's sole discretion, the failure to

18  comply does not threaten the health or safety of the citizens of the State of Washington and does

19  not create an emergency requiring immediate action, the Attorney General will notify Defendants

20  in writing of such failure to comply, and Defendants shall then have thirty (30) days from receipt

21  of such written notice to provide a written response to the Attorney General's determination that

22  there has been a failure to comply.  Upon reasonable request of Defendants, which request must

23  be made at the time of Defendants' written response to the Attorney General, a representative of

24  the Attorney General will meet with Defendants by phone or in the Office of the Attorney

25  General within fifteen (15) days of receipt by the Attorney General of Defendants' written

26  response, to discuss the Attorney General's determination that there has been a failure to comply.

CONSENT DECREE
CASE NO.  2:14-cv-01451-JLR       38      ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1   Any corrective or remedial action taken by Defendants shall be considered by Plaintiff in

2   determining whether further enforcement is necessary.

3        6.13    If permitted under relevant State or Federal law, and if Defendants believe there

4   exists good cause to cancel, alter, or modify this Consent Decree or any part thereof,

5   Defendants shall first make a written proposal for modification to Plaintiff. If, after forty-five

6   (45) days of Plaintiff's receipt of such proposal, Plaintiff has not agreed to such cancellation,

7   alteration, or modification, Defendants may petition to modify this Consent Decree pursuant to

8   the provisions, limitations, standards and requirements of the relevant State or Federal law.

9   Nothing herein shall be construed as Plaintiff's acknowledgement or agreement that any

10  particular circumstance(s) constitutes good cause or valid reason to cancel, alter or modify this

11  Consent Decree.

12       6.14    This Consent Decree sets forth all of the promises, covenants, agreements,

13  conditions and understandings between the parties, and supersedes all prior and

14  contemporaneous agreements, understandings, inducements or conditions, express or implied.

15  There are no representations, arrangements, or understandings, oral or written, between the

16  parties relating to the subject matter of this Consent Decree that are not fully expressed herein

17  or attached hereto.  Each party specifically warrants that this Consent Decree is executed

18  without reliance upon any statement or representation by any other party hereto, except as

19  expressly stated herein.

20       **WHEREFORE**, without trial or adjudication of the facts or law herein between the

21  parties to this Consent Decree, Defendants, Internet Order LLC, d/b/a Stroll, and d/b/a

22  Pimsleurapproach.com, and Daniel Roitman, agree to the signing of this Consent Decree and

23  this Court hereby orders that said Defendants shall be permanently enjoined from breaching

24  any and all of the aforementioned provisions, and this Consent Decree resolves any and all

25  civil claims under the Consumer Protection Law and ROSCA between the State of

26  Washington, by its Attorney General, through the Consumer Protection Division and

CONSENT DECREE
CASE NO.  2:14-cv-01451-JLR

39

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

1   Defendants arising from the specific allegations in the aforementioned Complaint of Plaintiff

2   in the above captioned action, except for those rights expressly reserved herein by said parties

3   to this action.

4

5         DATED this _1st_ day of ~~August,~~ September, 2015.

6

                                              JUDGE JAMES L. ROBART

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

40

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1

**FOR THE PLAINTIFF:**
STATE OF WASHINGTON
2     ROBERT W. FERGUSON
ATTORNEY GENERAL

3

4    Date__August 31, 2015_____   By:_/s/ Paula Selis_____
PAULA SELIS, WSBA 12823
5                                 Assistant Attorney General
Attorney General of Washington
6                                 800 5th Ave, Suite 2000
Seattle, WA 98104-3188
7                                 Phone: (206) 389-2514
E-mail: Paula.Selis@atg.wa.gov
8

9                     **FOR THE DEFENDANTS:**
INTERNET ORDER LLC, d/b/a STROLL and
10                    d/b/a PIMSLEURAPPROACH.COM and
DANIEL ROITMAN
11

12   Date:_____   By:_____
Daniel Roitman
13                               Chief Executive Office

14

15   Date:_____   By:_____
Daniel Roitman,
16                               Individually

17

18   Date:_____   By:_____
David Bateman
19                               K&L Gates
925 4th Ave #2900
20                               Seattle, WA 98104
Phone: (206) 370-6682
21                               Email: david.bateman@klgates.com

22

23

24

25

26

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

INTERNET ORDER LLC, d/b/a STROLL and
d/b/a PIMSLEUR APPROACH and d/b/a
PIMSLEURAPPROACH.COM and DANIEL
ROITMAN

Date:__8/27/15_____       By:_____

                                   Daniel Roitman
                                   Chief Executive Officer

Date:__8/27/15_____       _____

                                   Daniel Roitman
                                   Individually

Date: 8|27|205_____       By:_____

                                   Gregory R. Parks, Esq.
                                   Morgan, Lewis & Bockius LLP
                                   1701 Market Street
                                   Philadelphia, PA 19103
                                   *Counsel to Respondents*

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

| | |
|---|---|
| 1 | **FOR THE PLAINTIFF:**<br>STATE OF WASHINGTON |
| 2 | ROBERT W. FERGUSON<br>ATTORNEY GENERAL |
| 3 | |
| 4 | Date_____    By:_____<br>PAULA SELIS, WSBA 12823 |
| 5 | Assistant Attorney General<br>Attorney General of Washington |
| 6 | 800 5th Ave, Suite 2000<br>Seattle, WA 98104-3188 |
| 7 | Phone: (206) 389-2514<br>E-mail: Paula.Selis@atg.wa.gov |
| 8 | |
| 9 | **FOR THE DEFENDANTS:**<br>INTERNET ORDER LLC, d/b/a STROLL and |
| 10 | d/b/a PIMSLEURAPPROACH.COM and<br>DANIEL ROITMAN |
| 11 | |
| 12 | Date:_ 8/27/15 _____    By:_____<br>Daniel Roitman |
| 13 | Chief Executive Office |
| 14 | |
| 15 | Date:_ 8/27/15 _____    By:_____<br>Daniel Roitman,<br>Individually |
| 16 | |
| 17 | |
| 18 | Date:_ 8/31/15 _____    By:_____<br>David Bateman |
| 19 | K&L Gates<br>925 4th Ave #2900 |
| 20 | Seattle, WA 98104<br>Phone: (206) 370-6682 |
| 21 | Email: david.bateman@klgates.com |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |

CONSENT DECREE         41        ATTORNEY GENERAL OF WASHINGTON
CASE NO. 2:14-cv-01451-JLR              Consumer Protection Division
                                                800 Fifth Avenue, Suite 2000
                                                Seattle, WA 98104-3188
                                                   (206) 464-7745

**PROOF OF SERVICE**

I hereby certify that on August 31, 2015, I electronically filed the *Consent Decree* in this matter with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

K&L GATES LLP
David A. Bateman, WSBA # 14262
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Phone: (206) 370-6682
david.bateman@klgates.com
Attorneys for Defendants
Internet Order LLC and Daniel Roitman

DATED this 31st day of August, 2015.

Presented by:
ROBERT W. FERGUSON
Attorney General

By: /s/ Paula Selis
PAULA SELIS, WSBA 12823
Assistant Attorney General
Attorney General of Washington
800 Fifth Ave., Suite 2000
Seattle, WA 98104-3188
Phone: (206) 464-7662
Fax: (206) 587-5636
Email: Paula.Selis@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

CERTIFICATE OF SERVICE
FOR CONSENT DECREE
CASE NO. 2:14-cv-01451-JLR

42

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

# EXHIBIT A

Dear Consumer:

Pursuant to the settlement of the lawsuits by the Attorneys General of Pennsylvania and Washington against Internet Order LLC and the investigation by the New York Attorney General, you are receiving notice of a restitution claims process related to a purchase you previously made of Pimsleur Language Learning CDs.  If you believe you were charged for any CDs which you did not agree to purchase, you may be entitled to a refund. In order to be eligible for a refund, you must fully complete and submit the claim form found at HYPERLINK no later than (DATE—45 days from sending the email). For more information, you may visit (WEBSITE with URL or call XXXX—Claims Administrator 800#).

Very Truly Yours,

Kathleen G. Kane, Attorney General, Commonwealth of Pennsylvania

Eric T. Schneiderman, Attorney General, State of New York

Robert W. Ferguson, Attorney General, State of Washington

# EXHIBIT B

In order to be considered for a possible refund, you must fully complete all items below:

Name:

Street address:

City:

State:

Zip code:

☐ By checking this box, I am certifying that I received and paid for Pimsleur Language Learning CDs at some time between January 1, 2009 to April 1, 2013 that I did not intend to order.

By clicking the Submit button below, I am stating that the information provided above is true and correct to the best of my knowledge.

Submit

# EXHIBIT C

Dear Consumer:

Pursuant to the settlement of the lawsuits by the Attorneys General of Pennsylvania and Washington against Internet Order LLC, and the investigation by the New York Attorney General, you are receiving notice of a restitution claims process related to a purchase you previously made of Pimsleur Language Learning CDs. If you believe you were charged for any CDs which you did not agree to purchase, you may be entitled to a refund. In order to be eligible for a refund, you must fully complete and submit the claim form found at HYPERLINK no later than (DATE—45 days from sending the email). For more information, you may visit (WEBSITE with URL or call XXXX—Claims Administrator 800#).

Very Truly Yours,

Kathleen G, Kane, Attorney General, Commonwealth of Pennsylvania

Eric T. Schneiderman, Attorney General, State of New York

Robert W. Ferguson, Attorney General, State of Washington

# EXHIBIT D

Dear Consumer:

This is a friendly reminder that the deadline is approaching for submitting a claim for a possible refund pursuant to the settlement of the lawsuits by the Attorneys General of Pennsylvania and Washington against Internet Order LLC, and the investigation by the New York Attorney General. In order to be eligible for a refund for the purchase of Pimsleur language learning CDs, you must fully complete and submit the claim form found at HYPERLINK no later than (DATE—45 days from sending the initial email). For more information, you may visit (WEBSITE with URL or call XXXX—Claims Administrator 800#).

Very Truly Yours,

Kathleen G. Kane, Attorney General, Commonwealth of Pennsylvania

Eric T. Schneiderman, Attorney General, State of New York

Robert W. Ferguson, Attorney General, State of Washington

# EXHIBIT E

Dear Consumer:

Pursuant to the settlement of the lawsuits by the Attorneys General of Pennsylvania and Washington against Internet Order LLC, and the investigation by the New York Attorney General, enclosed please find a refund check relating to the purchase you previously made of Pimsleur Language Learning CDs. This check represents your share of the monies collected from Internet Order LLC, and no further payments will be forthcoming.

Please be advised that the check must be deposited or cashed within ninety (90) days of the date on the check.

Very Truly Yours,

Kathleen G. Kane, Attorney General, Commonwealth of Pennsylvania

Eric T. Schneiderman, Attorney General, State of New York

Robert W. Ferguson, Attorney General, State of Washington